**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
----------------------------------------------------------------X

NORTH SHORE-LONG ISLAND JEWISH
HEALTH SYSTEMS, INC.,

                       Plaintiff,

         -against-

MULTIPLAN, INC., TEAMSTERS LOCAL 210
AFFILIATED HEALTH & INSURANCE FUND,
AND LOCAL 812 HEALTH FUND,

                       Defendants.
----------------------------------------------------------------X

                                 **MEMORANDUM**
                                **AND ORDER**

                  CV 12-1633 (JMA) (AKT)

**A. KATHLEEN TOMLINSON, Magistrate Judge:**

## I.    P‍RELIMINARY STATEMENT

       The allegations involved in this case arise from the relationship between Plaintiff North

Shore-Long Island Jewish Hospital System, Inc. ("Plaintiff" or "Northwell"[1]), a health care

facility operator, and Defendant MultiPlan, Inc. ("Defendant" or "MultiPlan"), a preferred

provider organization, commonly referred to as a "PPO."  According to the Second Amended

Complaint, Northwell entered into an agreement with MultiPlan (the "Participation Provider

Agreement") in June 2007 that provided, *inter alia*, for MultiPlan's clients to access Northwell's

health care network at discounted reimbursement rates.  Second Amended Complaint ("Second

Am. Compl.") [DE 54] ¶ 7.  MultiPlan in turn entered into agreements with individual health

care plans which allowed members of these entities, as MultiPlan's clients, to access Northwell's

health care network at the discounted rates negotiated by MultiPlan.  *Id.* ¶¶ 14-16.  Between

---

[1]   Plaintiff now identifies as "Northwell Health System."  Plaintiff's Memorandum of
Law in Support of its Motion ("Pl.'s Mem. in Supp.") [DE 161] at 1.

2008 and 2010, Northwell and MultiPlan engaged in further negotiations, resulting in four amendments to the Participation Provider Agreement. *Id.* ¶¶ 9-13.

During the course of the Northwell-MultiPlan relationship, members of MultiPlan's client health care plans received health care services at Northwell's facilities. Second Am. Compl. ¶ 16. Northwell alleges that some of these entities repeatedly underpaid and/or were delinquent with payment of claims for health care services rendered by Northwell. *Id.* ¶¶ 17-18. Northwell claims it informed MultiPlan that this behavior constituted a breach of the terms of the Participation Provider Agreement. *Id.* On September 10, 2007, Northwell gave notice to MultiPlan that it was exercising its right under the Participation Provider Agreement to exclude the non-compliant MultiPlan clients[2] and their members from eligibility for discounted reimbursement rates in Northwell's health care network. *Id.* ¶ 10.

The heart of this action lies in MultiPlan's alleged acts and omissions following Northwell's notice that it was exercising its right to exclude MultiPlan's non-compliant clients from its in-network, discounted reimbursement rates. Northwell asserts that following its notice, MultiPlan deliberately misled Northwell about the fact that MultiPlan had not actually deemed its non-compliant clients to be excluded from Northwell's in-network, discounted rates. *See* Second Am. Compl. ¶¶ 22-26. MultiPlan allegedly also failed to advise these non-compliant clients that Northwell had deemed them excluded from its discounted, in-network rates. *See id.* ¶¶ 27-29, 32. As a result of MultiPlan's concealment and misrepresentations, Northwell claims, MultiPlan's non-compliant clients continued to receive services at Northwell facilities and to accrue charges at non-discounted rates. *Id.* ¶ 32. These charges remain unpaid. *Id.* ¶¶ 33-37.

---

[2]    According to Northwell, these entities include defendants Teamsters Local 210 Affiliated Health & Insurance Fund, Local 812 Health Fund, and possibly an entity named Crossroads Healthcare Management, LLC.

Northwell maintains that MultiPlan's misrepresentations and concealment were part of a deliberate plan to induce Northwell into continuing its business relationship with MultiPlan, to MultiPlan's benefit and Northwell's detriment. Northwell alleges it told MultiPlan that the exclusion of MultiPlan's non-compliant clients from eligibility for Northwell's discounted, in-network rates was, after September 10, 2007, "a material and necessary pre-condition" to continued negotiations with MultiPlan, negotiations which led to multiple amendments and renewal of the 2007 Participation Provider Agreement. Second Am. Compl. ¶¶ 9-13, 47. Northwell's Second Amended Complaint asserts no less than nine claims against MultiPlan and its non-compliant clients arising out of these alleged acts and omissions. *Id.* ¶¶ 30-116.

Before the Court is Northwell's motion to compel MultiPlan to produce certain electronically stored information and to impose sanctions on MultiPlan. Northwell seeks to compel production of, *inter alia*, information related to MultiPlan's revenues and profits during the course of its business relationship with Northwell. Northwell also argues that sanctions are appropriate given MultiPlan's misrepresentations and intransigence during the discovery process. MultiPlan opposes Northwell's motion. For the reasons which follow, Northwell's motion to compel certain electronically stored information relating to MultiPlan's revenues and profits, and for sanctions, is GRANTED, in part, and DENIED, in part.

## II.    RELEVANT BACKGROUND

This action and the pending discovery dispute have a complex procedural history. As such, the Court summarizes those aspects of the procedural background which bear directly on the instant motion and the parties' positions.

## A.    Procedural Posture

In Request No. 8 of its first Rule 34 request for the production of documents dated September 20, 2013, Northwell sought from MultiPlan any "document that would reflect any profit obtained by MultiPlan from January 1, 2006 to the present arising out [of] any contracts entered into between MultiPlan and the plaintiff."  Plaintiff's Declaration in Support ("Pl.'s Decl.") [DE 162] at Ex. 10.  In its November 18, 2013 response, MultiPlan "object[ed] to this Request on the same basis that it objected to Request for Documents No. 23 on the attached Exhibit 'A'," which in turn stated "MultiPlan asserts the General Objections; further responding, MultiPlan objects to Document Request No. 23 on the basis that it is overly-broad, irrelevant and not likely to lead to the discovery of admissible evidence."[3]  *Id.* at Ex. 11.  On February 13, 2014, MultiPlan served a supplemental response to Northwell's Request No. 8, stating:

> MultiPlan asserts the General Objections.  MultiPlan further objects to Request for Production No. 8 as impossibly vague, overly board, and unduly burdensome, in that it requests "[a]ny document" without regard to time period, custody, or control.  MultiPlan also objects to this Request as it is not reasonably calculated to lead to the discovery of admissible evidence as it seeks documents predating the allegations in this lawsuit.  MultiPlan further objects to this Request as irrelevant as any alleged profit of MultiPlan is not at issue nor is it a measure of damages available to Plaintiff under any cause of action. MultiPlan further objects to this Request to the extent it seeks documents protected by the attorney-client and/or work-product privilege.  MultiPlan also objects to this Request to the extent it seeks documents already in the possession, custody, or control of Plaintiff, particularly those previously produced.

*Id.* at Ex. 12.  On February 24, 2014, MultiPlan served a second supplemental response to Northwell's Request No. 8.  This response was identical in part to the first four sentences of its

---

[3]   The Court points out that this type of general objection is insufficient to preclude otherwise appropriate discovery and is no longer the proper standard, as discussed *infra* at Section III.C.

first supplemental response, with the following addition: "Further responding, MultiPlan has no documents responsive to this Request." *Id.* at Ex. 13.

On February 28, 2014, Northwell filed a letter motion with the Court requesting that MultiPlan be compelled to comply with Request No. 8 of Northwell's first Rule 34 Request. *See generally* Plaintiff's First Motion to Compel ("Pl.'s First Mot. to Compel") [DE 86]. Northwell argued that information related to MultiPlan's profits and revenues, as evidence of the motive for MultiPlan's misrepresentations, was relevant to its claim for fraud and punitive damages. *Id.* at 2. According to Northwell, the language of MultiPlan's amended responses to Request No. 8, the realities of MultiPlan's day-to-day business operations, and the fact that MultiPlan had already produced several documents related to its revenues, all belied its assertion that it had no responsive documents. *Id.* at 2-3.

MultiPlan opposed Northwell's initial motion. According to MultiPlan, it agreed to perform and did perform a good faith search for documents responsive to Request No. 8 and found none. *See* Defendant's Opposition to Plaintiff's First Motion to Compel ("Def.'s Opp'n. to Pl.'s First Mot. to Compel") [DE 89] at 1-2. MultiPlan also took issue with what it saw as Northwell's conflation of the terms "profit" and "revenue" and asked the Court to limit Northwell's inquiry strictly to information relating to "profit." *Id.* at 3 ("To the extent that North Shore would now ask the Court to broaden its Request to include revenues or other areas not included in the term 'profits,' MultiPlan would object to any such request.").

While that motion was pending, Northwell served a second Rule 34 Request on July 24, 2014. *See* Pl.'s Decl., Ex. 20. That request sought documents which Northwell alleges were referenced at the April 28, 2014 depositions of two MutliPlan representatives, Michael Genzel

and James Taratunio. *See id.* at Ex. 18, 19. Northwell sought, *inter alia*, the following documents:

> (h) [] documents regarding MultiPlan being compensated by part of shared savings as referenced at page 62, line 18 [of Michael Genzel's deposition transcript];
>
> . . .
>
> (j) Any documents regarding the process to determine the volume and/or the total charges, as identified at pages 74-76 and 79 [of Michael Genzel's deposition transcript], and provide such information with regard to all the claims processed by MultiPlan for plaintiff for 2006 through the present by year, including any reports and/or electronic data;
>
> (k) Any documents regarding a report by volume and charges by payor, as identified at page 76 and 22 [of Michael Genzel's deposition transcript], and provide such information by year from 2006 to the present, for all claims processed by MultiPlan for plaintiff . . . including but not limited to any electronic data;

and

> (k) Any documents concerning Crossroads claims payment history from 2006 – 2010;
>
> (l) All documents concerning a report for claims of members of Crossroads generated through MultiPlan, as identified at pages 66-67 [of James Taratunio's deposition transcript], provide such information for the years 2006-2010.

*Id.,* Ex. 20. Dated September 5, 2014, MultiPlan's response to Northwell's second Rule 34 Request asserted that for all but one of the above referenced requests, no such documents existed or could be produced. *Id.* at Ex. 21.

On August 5, 2014,[4] Northwell served on MultiPlan a combined Rule 30(b)(6) Notice and Rule 34 Request. *See* Pl.'s Decl., Ex. 3. The Rule 30(b)(6) Notice identified fifteen topics

---

[4]   The Notice appears to be mistakenly dated August 5, 2012.

for testimony, including "[k]nowledge of revenue, profit, and volume generated by MultiPlan, Inc. by way of the processing of claims of the beneficiaries of MultiPlan's clients' health plans who were treated at or received services from the plaintiff from 2006 until 2011." *Id.* MultiPlan did not serve any objections to the noticed topics bearing on MultiPlan's revenues and profits. Plaintiff's Reply Declaration ("Pl.'s Reply Decl.") [DE 167] at 4. Northwell's August 5, 2014 Rule 34 Request identified four categories of documents for production, including "[a]ll documents and data demonstrating revenue, profit, and volume generated by MultiPlan, Inc. by way of processing claims received from North Shore-LIJ from 2006 through 2011." Pl.'s Decl., Ex. 3. MultiPlan similarly did not serve any objections to this Rule 34 request. Pl.'s Reply Decl. at 4.

In an Order dated September 29, 2014, the Court ruled on Northwell's initial motion to compel [DE 86], authorizing Northwell to serve a Rule 30(b)(6) Notice to probe the representation made by MultiPlan's counsel that MultiPlan did not have any documents responsive to Request No. 8 of Northwell's first Rule 34 Request. *See* DE 141 at 4. The Court further instructed Northwell that "[t]he Notice must provide the lists of topics related to the information on profits it is seeking." *Id.* Thereafter, on or about October 30, 2014, Northwell served on MultiPlan an amended and supplemental Rule 30(b)(6) Notice and Rule 34 Request. *See* Pl.'s Decl., Ex. 2. This amended Notice identified twenty-three topics for testimony, including, *inter alia*, the details of MultiPlan's expenses, revenues, and profits with respect to claims for services provided by Northwell. *Id.* The amended Rule 34 Request identified five categories of documents and electronic information for production, including documents relating to "any revenues, expenses, or profits of MultiPlan in connection with the processing of claims for health care services provided by North Shore-LIJ in each year from 2006 through 2011." *Id.*

The deposition of MultiPlan's Rule 30(b)(6) corporate representative, Leeann Christ, took place on April 20, 2016. On September 14, 2016, in an apparent attempt to preempt Northwell's anticipated motion to compel, MultiPlan filed a letter motion requesting a protective order "prohibiting North Shore from pursuing any further written or deposition discovery with respect to MultiPlan's profits, revenues, or expenses as a result of its contract with North Shore." DE 155 at 2. The Court denied MultiPlan's motion in an Order dated September 25, 2016. *See* DE 159. On October 17, 2016, Northwell filed the instant motion to compel production of discovery and for sanctions against MultiPlan, with MultiPlan's opposition.

### B. The Parties' Positions

#### 1. *Northwell's Motion to Compel*

Northwell asks the Court to compel MultiPlan to produce an extensive amount of electronically stored information, the existence of which was purportedly confirmed by MultiPlan's Rule 30(b)(6) deponent, Ms. Christ. According to Northwell, Ms. Christ testified to the existence of four categories of information pertinent to MultiPlan's revenue associated with the re-pricing of Northwell claims, as described below.[5] *See generally* Plaintiff's Motion to Compel ("Pl.'s Mot.") [DE 160].

*First*, Northwell alleges Ms. Christ "admitted MultiPlan can run reports from its databases showing (1) each claim by Northwell, including the Northwell facility or ancillary provider responsible for that claim; (2) the number, amount, and date of that claim; and (3) the MultiPlan client responsible to pay Northwell the re-priced amount of each such claim." Pl.'s Mem. at 5.

---

[5] Northwell notes that MultiPlan limited Ms. Christ's testimony to three of the topics listed in the Rule 30(b)(6) Notice, namely those regarding profit, revenue, and expenses associated with the re-pricing of Northwell claims. *See* Pl.'s Mem. at 4.

*Second*, Northwell alleges Ms. Christ admitted that MultiPlan's databases contain data showing the type of fee arrangement MultiPlan had with its clients, with clients paying either a "percentage of savings" access fee ("percentage of savings clients") to MultiPlan for access to its discounted network rates, or a flat "per employee, per month" access fee ("per employee, per month clients") for access to MultiPlan's discounted network rates. Pl.'s Mem. at 5.

*Third*, Northwell alleges Ms. Christ admitted that with respect to Northwell claims re-priced by or for percentage of savings clients, MultiPlan databases contain information, separable by year, regarding (1) the amount of each re-priced claim; (2) the amount of savings the client was calculated to realize on each claim; (3) the percentage of savings that the client agreed to pay MultiPlan; (4) the corresponding amount of money the client was obliged to pay MultiPlan for each claim; (5) each client's payment history to MultiPlan; and (6) the total amount of claim charges for all providers in the MultiPlan network which were submitted for re-pricing for or by each such client. *See* Pl.'s Mem. at 5-6.

*Fourth*, Northwell alleges Ms. Christ admitted that with respect to Northwell claims re-priced by or for per employee, per month clients, MultiPlan databases contain information, separable by year, regarding (1) the amount of each re-priced claim; (2) the monthly access fee rate each such client agreed to pay MultiPlan; (3) each such client's history of payments of monthly access fees; and (4) the total amount of claim charges of all providers in the MultiPlan network that were submitted for re-pricing by or for each such client. *See* Pl.'s Mem. at 6.

Based on the purported admissions of MultiPlan's Rule 30(b)(6) corporate representative, Northwell asks the Court to compel production of the following five categories of information relative to the period January 1, 2007 through December 31, 2011:

> (1) data regarding the number, amount, and date of each Northwell claim charge, the name of the MultiPlan client associated with the

claim, and whether that client is a percentage of savings or a per employee, per month client;

(2) for each percent of savings client responsible to pay a Northwell claim, the amount of each re-priced claim, the savings realized by the client, and the percentage of that savings paid to MultiPlan, in addition to invoices prepared for each such client, documents reflecting accounts receivable for each such client, and the total claims submitted by all other providers (other than Northwell) for re-pricing of claims by or for each such client;

(3) for each per employee, per month client responsible to pay a Northwell claim, the amount of revenue MultiPlan received from each such client, along with the number of claim charges submitted by Northwell for each client, and the number of claim charges submitted by all other providers (other than Northwell) for each such client;

(4) the identity of an unidentified percentage of savings client referenced in the Rule 30(b)(6) deposition and information regarding its claims and payments to MultiPlan; and

(5) a sworn statement from a MultiPlan representative regarding exactly what fields of information can be extracted from any MultiPlan database.

Pl.'s Mem. at 11-15.  According to Northwell, MultiPlan has an obligation to run reports to produce this data even if MultiPlan does not usually run such reports in the ordinary course of business.  *Id.* at 17.  As Northwell argues, "it is the fact that the business stores and keeps the data, not whether or how the business uses the data, which makes the data discoverable."  *Id.* The fact that the data by itself may not be dispositive on an issue does not preclude production according to Northwell, for "a party even must provide data that might be combined to show something that is not otherwise in the database."  *Id.* at 18.

Northwell further argues that the October 30, 2014 Rule 30(b)(6) Notice did not exceed the scope of the Court's September 29, 2014 Order authorizing Northwell to perform its Rule 30(b)(6) deposition.  Northwell points to the Court's use of the word "topics," plural, in directing

that Northwell's Rule 30(b)(6) Notice "must provide the list of topics on profits that it is seeking." Pl.'s Mem. at 19. This authorization to probe multiple topics related to profits is, according to Northwell, "consistent with other court holdings that discovery on a topic encompasses any component part of that topic." *Id.*

Lastly, Northwell argues the Rule 34 Request that accompanied its October 30, 2014 Rule 30(b)(6) Notice is not barred by any discovery deadline. Pl.'s Mem. at 21. Even if the Court did not intend to permit any new document request for the information identified at the Rule 30(b)(6) deposition, MultiPlan has an obligation to supplement, or provide in the first instance, responses to numerous outstanding discovery requests seeking the same information. *Id.*

With regard to sanctions, Northwell asks the Court for its fees in filing its original motion to compel of February 28, 2014, preparing the Rule 30(b)(6) Notices and Requests, conducting the Rule 30(b)(6) deposition, and making the instant motion. *See* Pl.'s Mem. at 23-24. Northwell also asks that the Court issue a preclusion order preventing MultiPlan from submitting evidence on expenses associated with the revenues generated from the processing and re-pricing of Northwell claims, as Ms. Christ was purportedly unable to testify as to the existence of any such expenses in her deposition. *Id.* at 24.

### 2. *MultiPlan's Opposition*

MultiPlan opposes Northwell's motion on four grounds. First, MultiPlan argues that Northwell has failed to comply with Local Civil Rule 37.1. *See* Defendant's Memorandum in Opposition to Plaintiff's Motion to Compel ("Def.'s Opp'n.") [DE 163] at 6. Rule 37.1 requires a party seeking court intervention under Fed. R. Civ. P. 37 to "specify and quote or set forth verbatim in the motion papers each discovery request and response to which the motion or

application is addressed." Loc. Civ. R. 37.1. MultiPlan argues that Northwell fails to set forth the individual requests and responses at issue in the body of its motion, and its motion should be denied as a result. *See* Def.'s Opp'n. at 7.

Identifying the scope of permissible discovery as limited to information relevant to the parties' claims and defenses, MultiPlan next argues that Northwell does not present a viable claim for fraud or punitive damages. *See* Def.'s Opp'n. at 7. Without a viable fraud claim, the argument goes, Northwell is not entitled to information the relevance of which goes only to an alleged fraudulent motive. *Id.* at 7-11. MultiPlan also takes issue with the fact that Northwell has presented no evidence "that anyone at MultiPlan who participated in the alleged inducements had any knowledge of the profits or revenue MultiPlan received through the Northwell Agreement." *Id.* at 11. Similarly, MultiPlan argues that Northwell cannot credibly allege that calculations of profits or revenues motivated any fraudulent behavior where MultiPlan does not create or maintain these calculations in the ordinary course of business. *Id.* Additionally, MultiPlan challenges the breadth of the information sought, noting the motion "seeks documents and information regarding charges related to any client of MultiPlan, and in fact also seeks documents and information related to providers other than Northwell." *Id.* at 12.

Third, MultiPlan argues that producing the information Northwell seeks would improperly require MultiPlan to "create" new documents. Def.'s Opp'n. at 13. MultiPlan asserts that its systems "do not and cannot break down revenues for clients by provider or clients who choose to pay for access through the PEMP[6] method, nor is the system capable of tracking expenses by provider at all." *Id.* Because its systems do not store or produce data in the manner sought by Northwell, MultiPlan argues it "would have to perform calculations across multiple

---

[6] PEMP refers to "Per Employee, Per Month."

systems to create the information sought by Northwell. [ ] This is not merely the extraction of data into a new report as Northwell would suggest, but rather the creation of new data from multiple sources using calculations. That is simply beyond the scope of Rule 34." *Id.* at 14.

Lastly, MultiPlan contends that the discovery Northwell now seeks was not timely requested. Laying out the six discovery requests it sees as bearing on the instant motion, MultiPlan argues that each request was either mooted by a subsequent request or court order, or in the case of Northwell's July 24, 2014 Rule 34 Request, served after the May 30, 2014 fact discovery deadline set forth in the Court's Final Scheduling Order. *See* Def.'s Opp'n. at 17 (citing DE 78).

With respect to Northwell's motion for sanctions, MultiPlan states that it has complied with its discovery obligations, and should not be punished for what it sees at Northwell's improper enlargement of the scope of discovery. Def.'s Opp'n. at 19. MultiPlan also argues that Northwell is not entitled to a preclusion order, as it has failed to set forth any facts that would support a finding it has suffered prejudice as a result of MultiPlan's actions. *Id.* at 20.

### 3. Northwell's Reply

Challenging MultiPlan's argument that it has failed to comply with Local Civil Rule 37.1, Northwell asserts that because the instant motion is a "follow up to the Court's disposition of a prior motion to compel and the Court ordered 30(b)(6) deposition, it has identified the pertinent discovery requests and responses in substantial compliance with Local Civil Rule 37.1." Pl.'s Reply Mem. [DE 166] at 1. Northwell also attaches to its reply memorandum a declaration setting forth the passages of each relevant discovery request and Multiplan response that bear on the instant motion. *See generally* DE 167.

Northwell addresses MultiPlan's argument that the discovery it seeks is not relevant because of purported legal insufficiencies of Northwell's claim for punitive damages and fraud. *See* Pl.'s Reply Mem. at 2. According to Northwell, "a party may not avoid discovery on the ground the discovery relates to allegations that are not viable or well-pleaded." *Id.* at 3. Further, Northwell argues this Court does not have the authority to render an essentially dispositive determination on the viability of claims or defenses. *Id.* And Northwell points out that MultiPlan has not raised its relevance objection prior to its opposition to the instant motion, and as such, the objection is waived. *Id.* at 3-4. Lastly, Northwell argues that MultiPlan cannot prevent discovery of information on the grounds that, in MultiPlan's view, its employees did not access it in the ordinary course of business and therefore could not form a fraudulent motive. *Id.* at 4. According to Northwell, "it is for the trier of fact, not MultiPlan, to decide the credibility of [MultiPlan's employees] regarding their motivation to lie." *Id.*

Regarding the timeliness of the relevant discovery requests, Northwell points out that in a July 17, 2014 letter, counsel for MultiPlan submitted a joint proposal of an October 31, 2014 deadline to serve written discovery, making Northwell's July, August, and October 2014 requests timely. *See* Pl.'s Reply Mem. at 8 (referencing DE 131). Northwell observes that "[t]he Court has not yet entered a final scheduling order setting a deadline to complete fact discovery, and on August 19, 2016, the parties submitted a joint report to the Court regarding the status of open fact and expert discovery which remains to be completed, including fact discovery sought by MultiPlan." *Id.* at 8-9 (citing DE 153).

## III.   D<span>ISCUSSION</span>

### A.   Alleged Procedural Deficiencies

As an initial matter, the Court finds unpersuasive MultiPlan's argument that Northwell's motion warrants denial on the basis of noncompliance with Local Civil Rule 37.1, or on the basis of untimeliness.

#### 1.   *Local Civil Rule 37.1*

Local Civil Rule 37.1 requires that in any motion made pursuant to Federal Rule of Civil Procedure 37, "the moving party shall specify and quote or set forth verbatim in the motion papers each discovery request and response to which the motion or application is addressed. The motion or application shall also set forth the grounds upon which the moving party is entitled to prevail as to each request or response." Loc. Civ. R. 37.1. Rule 37.1 exists to prevent the needless waste of judicial resources that occurs when the Court has to constantly flip-flop between documents in order to locate the discovery request at issue, the opposing party's response, the nature of each party's arguments, and the relevant case law cited in support of each party's position. *See Carl v. Edwards*, No. 16 Civ. 3863, 2017 WL 4271443, at *5 (E.D.N.Y. Sept. 25, 2017).

While it is true that Northwell's memorandum of law does not explicitly identify which of several discovery requests the instant motion addresses,[7] the Court has the discretion to view the instant motion as a "follow-up" to the Court's September 29, 2014 Order, and Northwell's February 28, 2014 motion to compel on which that Order was based. *See* Pl.'s Reply Mem. at 1. Northwell's February 28, 2014 motion substantially complied with Local Civil Rule 37.1. *See*

---

[7]  Northwell submits a reply declaration that attempts to address this. *See generally* DE 167.

DE 86. Indeed, the first sentence of Northwell's memorandum in support of the instant motion states the motion is being made "pursuant to this Court's September 29, 2014 Order." Pl.'s Mem. at 1. The fact that MultiPlan is able to easily identify the operative discovery request on page 1 of its opposition memorandum provides further support for construing the instant motion as an extension of Northwell's February 28, 2014 motion and this Court's September 28, 2014 Order. *See* Def.'s Opp'n. at 1 (identifying Request No. 8 as "[c]entral to [the initial motion to compel] and the current dispute"). The Court also finds MultiPlan's reliance on *Johnson v. Riverhead Cent. Sch. Dist*., No. 14-CV-7130, 2016 WL 4507002 (E.D.N.Y. Aug. 26, 2016) unavailing. *See* Def.'s Opp'n. at 7. *Johnson* involved an egregious violation of Rule 37.1 and is distinguishable from the unique procedural circumstances identified above. The Court consequently declines to deny the motion for a claimed failure to comply with Rule 37.1.[8]

### 2. Timeliness

MultiPlan's argument that the information Northwell now seeks was not timely requested appears to have two components. First, MultiPlan argues the information Northwell seeks is beyond the scope of Request No. 8 of its September 20, 2013 Rule 34 Request as well as the scope of the September 29, 2014 Court Order addressing that request, and is therefore not timely. *See* Def.'s Opp'n. at 18. That Order, MultiPlan maintains, authorized a Rule 30(b)(6) deposition only "for the limited purpose of exploring MultPlan's representation that it did not maintain documents reflecting profit by provider." *Id.* (internal quotations omitted). Second, MultiPlan argues the other discovery requests potentially at issue, namely the July 24, 2014 Rule 34 Request and the August 5 and October 30, 2014 Rule 30(b)(6) Notices and Rule 34 Requests, are either

---

[8] The Court declines to address Northwell's 2011 discovery requests stemming from the state court proceeding. *See* DE 167 at 8-9.

untimely because they were served after the May 30, 2014 discovery deadline, or were mooted by some subsequent event.  *Id.* at 17-18.

MultiPlan's argument that the July 24, 2014 Rule 34 Request is untimely is belied by the fact that MultiPlan responded to the request, as it admits, *see* Def.'s Opp'n. at 17-18, and without any apparent objection to timeliness.[9]  *See* Pl.'s Decl., Ex. 21.  More importantly, as explained above, the Court views the instant motion as an extension of Northwell's initial motion to compel and the September 29, 2014 Order addressing it.  Both of these documents concerned Request No. 8 of Northwell's first Rule 34 Request.  Accordingly, any information properly within the scope of Request No. 8 is considered to have been timely requested.

**B.  The Proper Scope of Request No. 8 and the Court's September 29, 2014 Order**

Having determined that (1) the instant motion is appropriately viewed as an extension of Northwell's initial motion to compel and the Court's September 29, 2014 Order, and (2) no procedural deficiencies preclude analysis of the motion's substance, the Court turns to the issue of the proper scope of Request No. 8 and this Court's September 29, 2014 Order.

Request No. 8 of Northwell's First Rule 34 Request seeks "[a]ny document that would reflect any profit obtained by MultiPlan from January 1, 2006 to the present arising out [of] any contracts entered into between MultiPlan and the plaintiff."  Pl.'s Decl., Ex. 10.  In its September 29, 2014 Order, the Court authorized a Rule 30(b)(6) deposition to explore MultiPlan's assertion that it "has no documents that reflect profits obtained by it from the North Shore contract."  DE 141 at 3; *see* DE 89 at 2.  The Court directed Northwell to provide "the list

---

[9]  In addition, while the Court issued a "Final Scheduling Order" on January 29, 2014 that established a deadline for fact discovery of May 30, 2014, *see* DE 78, in an Order dated July 2, 2014, the Court acknowledged that discovery was proceeding beyond this date and stated its intention to issue a subsequent final scheduling order.  *See* DE 123.

of topics related to the information on profits that it is seeking." DE 141 at 4. MultiPlan now

objects to Northwell's request of "component parts" of documents pertaining to its profits.

Def.'s Opp'n. at 2. According to MultiPlan, Northwell's argument that it can use component

parts of MultiPlan's records to perform its own analysis is "spurious, as it asks the Court and

MultiPlan to read a discovery request so broadly that it includes any document that could ever be

conceivably linked to MultiPlan's profit or revenue." *Id.* MultiPlan's argument is

unpersuasive.[10]

  Black's Law Dictionary defines "profit" as "[t]he excess of revenues over expenditures in

a business transaction." Black's Law Dictionary (10th ed. 2014); *see Arthur the Dog v. U.S.*

*Merch. Inc.,* No. 05 Civ. 0958, 2007 WL 2493427, at *6 (E.D.N.Y. Aug. 29, 2007) ("[N]et

profits can be defined as the gross amount that would have been received pursuant to the

business less the cost of running the business.") (internal quotations omitted). Since the concepts

of revenue, expenses, and profit are inexorably intertwined, and since this Court's September 29,

2014 Order correctly presupposed any Rule 30(b)(6) deposition would involve testimony on

multiple topics related to "profit," it would be an improperly narrow reading of both Request

No. 8 and the Court's September 29, 2014 Order to conclude that MultiPlan does not have an

obligation to produce documents bearing on revenue and expenses related to its contract with

Northwell. Accordingly, to the extent mandated by Fed. R. Civ. P. 34, MultiPlan must produce

any information otherwise discoverable within the scope of Fed. R. Civ. P. 26 that reflects profits

---

[10] The Court also observes that MultiPlan attempts to frame Northwell's discovery
request as a request for "profits, revenues, or expenses *by provider.*" *See* DE 163 at 2, 4
(emphasis added); *see also* DE 155. The argument appears to be that production as requested by
Northwell would impermissibly require MultiPlan to organize and aggregate data so it is
presented "by provider." However, Northwell's Request No. 8 includes no such qualifier, and
rather seeks documents reflecting profit "arising out [of] any contracts entered into between
MultiPlan and the plaintiff." Pl.'s Decl., Ex. 10.

– including revenue and expenses, related to any contract between MultiPlan and Northwell within in the pertinent time period.

### C.     Whether the Requested Information is "Discoverable" Under Fed. R. Civ. P. 26(b)(1)

Federal Rule of Civil Procedure 26(b)(1), as amended on December 1, 2015, recognizes that "[i]nformation is discoverable . . . if it is relevant to any party's claim or defense and is proportional to the needs of the case."  Rule 26 Advisory Committee Notes to 2015 Amendments; *see Sibley v. Choice Hotels Int'l*, No. CV 14-634, 2015 WL 9413101, at *2 (E.D.N.Y. Dec. 22, 2015) (recognizing that "the current version of Rule 26 defines permissible discovery to consist of information that is, in addition to being relevant 'to any party's claim or defense,' also 'proportional to the needs of the case.'") (internal citation omitted).  "Information is relevant if:  (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action.  Relevance is a matter of degree, and the standard is applied more liberally in discovery than it is at trial."  *Vaigasi v. Solow Mgmt. Corp.*, No. 11 Civ. 5088, 2016 WL 616386, at *11 (S.D.N.Y. Feb. 16, 2016) (internal quotations and citations omitted).

Notably, although Rule 26 still permits a wide range of discovery based upon relevance and proportionality, the "provision authorizing the court . . . to order discovery of any matter relevant to the subject matter involved in the action" has been eliminated.  Rule 26 Advisory Committee Notes to 2015 Amendments; *see Sibley*, 2015 WL 9413101, at *2 (internal citation omitted).  The rationale behind the elimination of this phrase is the reality that it "has been used by some, incorrectly, to define the scope of discovery."  Rule 26 Advisory Committee Notes to 2015 Amendments.  Thus, Rule 26(b)(1), as amended, although not fundamentally different in scope from the previous version "constitute[s] a reemphasis on the importance of proportionality

in discovery but not a substantive change in the law." *Vaigasi*, 2016 WL 616386, at *13; *see Robertson v. People Magazine*, No. 14 Civ. 6759, 2015 WL 9077111 at *2 (S.D.N.Y. Dec. 16, 2015) ("[T]he 2015 amendment [to Rule 26] does not create a new standard; rather it serves to exhort judges to exercise their preexisting control over discovery more exactingly.").

Notwithstanding the foregoing principles, "[t]he party seeking discovery must make a *prima facie* showing that the discovery sought is more than merely a fishing expedition." *Barbara v. MarineMax, Inc.*, No. 12 Civ. 368, 2013 WL 1952308, at *2 (E.D.N.Y. May 10, 2013) (citing *Wells Fargo Bank, N.A. v. Konover,* No. 05 Civ. 1924, 2009 WL 585430, at *5 (D.Conn. Mar. 4, 2009)); *Denim Habit, LLC, v. NJC Boston, LLC*, No. 13-CV-6084, 2016 WL 2992124, at *3 (E.D.N.Y. May 23, 2016). Once the requesting party has made a *prima facie* showing of relevance, "it is up to the responding party to justify curtailing discovery." *Fireman's Fund Ins. Co. v. Great American Ins. Co. of New York*, 284 F.R.D. 132, 134 (S.D.N.Y. 2012); *Winfield v. City of New York*, No. 15-CV-05236, 2018 WL 716013, at *4 (S.D.N.Y. Feb. 1, 2018) ("The party seeking discovery bears the initial burden of proving the discovery is relevant, and then the party withholding discovery on the grounds of burden, expense, privilege, or work product bears the burden of proving the discovery is in fact privileged or work product, unduly burdensome and/or expensive.").

However, "[g]eneral and conclusory objections as to relevance, overbreadth, or burden are insufficient to exclude discovery of requested information." *Lindsey v. Butler*, No. 11 CIV. 9102, 2017 WL 4157362, at *3 (S.D.N.Y. Sept. 18, 2017) (quoting *Melendez v. Greiner*, No. 01 Civ. 7888, 2003 WL 22434101, at *1 (S.D.N.Y. Oct. 23, 2003)); *Trilegiant Corp. v. Sitel Corp.*, 275 F.R.D. 428, 431 (S.D.N.Y. 2011) (same); *Diaz v. Local 338 of Retail, Wholesale Dep't Store Union, United Food & Commercial Workers*, No. 13-CV-7187, 2014 WL 4384712, at *2

(E.D.N.Y. Sept. 3, 2014) (same). "Rather, a party resisting discovery has the burden of showing 'specifically how, despite the broad and liberal construction afforded the federal discovery rules, each interrogatory is not relevant or how each question is overly broad, burdensome or oppressive.'"[11] *Lindsey*, 2017 WL 4157362, at *3 (quoting *Fort Worth Employees' Retirement Fund v. JP. Morgan Chase & Co.,* 297 F.R.D. 99, 102-03 (S.D.N.Y. 2013)).

### 1. *Relevance to a Claim or Defense*

The Court is not persuaded by MultiPlan's argument that, generally speaking, Northwell's request for information reflecting MultiPlan's profits arising out of any contract with Northwell lacks relevance to a claim or defense in this litigation. According to MultiPlan, Northwell's fraud claim is insufficient in law because (1) MultiPlan's conduct is not actionable as an independent tort; (2) MultiPlan's conduct was not part of a pattern of behavior aimed at the public generally; and (3) Northwell's fraud claim is duplicative of its breach of contract claim. *See* Def.'s Opp'n. at 9-10. Because Northwell lacks a viable fraud claim, the logic goes, information relevant only to that claim is not discoverable within the scope of Fed. R. Civ. P. 26. *Id.* at 11. However, and as Northwell points out, MultiPlan's opposition to a discovery motion is not the proper forum for raising challenges to the viability of Northwell's claims, nor are such challenges proper grounds to preclude otherwise appropriate discovery. *See XChange Telecom Corp. v. Sprint Spectrum L.P.*, No. 14-CV-54, 2015 WL 773752, at *3 (N.D.N.Y. Feb. 24, 2015)

---

[11] Significantly, "[t]his too remains true after the 2015 amendments to Rule 26. 'Restoring the proportionality calculation to Rule 26(b)(1) does not change the existing responsibilities of the court and the parties to consider proportionality, and . . . does not place on the party seeking discovery the burden of addressing all proportionality considerations.'" *Royal Park Investments SA/NV v. Deutsche Bank Nat'l Tr. Co.*, No. 14-CV-04394, 2016 WL 4613390, at *7 (S.D.N.Y. Aug. 31, 2016) (quoting Rule 26 Advisory Committee Notes to 2015 Amendments).

("[I]t is not presently appropriate given the pending motion [to compel], or within the jurisdiction of the undersigned, to determine whether the substantive issues raised during the briefing should lead to the decision that various claims or defenses need to be stricken and that, by extension, the discovery demands are inappropriate. Instead such arguments regarding the viability of the remaining claims and defenses should be properly presented, in a dispositive motion, before the District Judge."); *Electrified Discounters, Inc. v. MI Techs., Inc.*, No. 3:13-CV-1332, 2015 WL 2383618, at *6 (D. Conn. May 19, 2015) ("Because an adjudication on the merits normally comes only after discovery, it is no objection to a[ ] [discovery request] that it relates to a defense or claim which is insufficient in law.") (citing *Kimbro v. I.C. System, Inc.*, No. 3:01-CV-1676, 2002 WL 1816820, at *1 (D. Conn. July 22, 2002)).

The Court finds MultiPlan's remaining arguments regarding relevance to be similarly flawed. MultiPlan argues that because "Northwell cannot dispute that MultiPlan does not create or maintain . . . in the ordinary course of business" information sought by Northwell, Northwell cannot credibly assert this information was sufficiently known to MultiPlan's employees to provide a motive for its alleged fraudulent actions. Def.'s Opp'n. at 11-12. As with its argument regarding the viability of Northwell's claims, here MultiPlan raises an issue properly addressed outside of the discovery context. MultiPlan's argument goes to the credibility of its employee-witnesses, and should be properly made to a trier of fact rather than in opposition to a discovery motion. Additionally, the purpose of the Court's September 29, 2014 Order was to allow Northwell to probe MultiPlan's representation that it did not have documents reflecting profit earned by MultiPlan arising out of its contract with Northwell. *See* DE 141. For Northwell to effectively probe this representation, Northwell should be able to examine the data at issue itself and draw its own conclusions about its ability to inspire motive.

For the foregoing reasons, the Court finds that information relating to MultiPlan's revenues, expenses, or profits arising out of any contract with Northwell is relevant to a claim in this litigation pursuant to Fed. R. Civ. P. 26. *See* Second Am. Compl. ¶¶ 44-48, 72-75.

### 2. *Proportionality*

To be discoverable within the scope of Fed. R. Civ. P. 26, information that is relevant to a party's claim or defense must also be

> proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to the information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

FED. R. CIV. P. 26(b)(1). "Proportionality and relevance are 'conjoined' concepts; the greater the relevance of the information in issue, the less likely its discovery will be found to be disproportionate." *Vaigasi*, 2016 WL 616386, at *14 (citation omitted).

While the Court finds that, generally speaking, the information sought in Request No. 8 of Northwell's first Rule 34 Request satisfies the relevance requirement of Rule 26, some of the discovery Northwell seeks in the instant motion fails the proportionality requirement of Rule 26. After reviewing the party's motion papers, the transcript of Leann Christ's deposition, and the five categories of information Northwell seeks in its motion, *see* Pl.'s Mem. at 11-15, the Court concludes that data contained in MultiPlan's databases (1) pertaining to claims submitted by providers other than Northwell, and (2) pertaining to MultiPlan clients for whose members no record of a Northwell charge exists, are over-inclusive and not proportional to the needs of the case. This conclusion is supported by the fact that Northwell's primary motivation in seeking this information is to support a claim for punitive damages. Indeed, Northwell's Second Amended Complaint alleges multiple causes of action which are not dependent upon the probity

23

of the data Northwell seeks. In these circumstances, where the breadth and volume of the data

requested is potentially vast, proportionality principles require tailoring production to the subject

matter of the litigation and the parties involved. *See Cornell Research Found., Inc. v. Hewlett*

*Packard Co*., No. 5:01-CV-1974, 2005 WL 5955715, at *5 (N.D.N.Y. Oct. 11, 2005) (finding

reports run from databases that produce data on products not the subject of a patent infringement

lawsuit to be over-inclusive). For these reasons, the Court finds that requests for (1) data

pertaining to claims submitted by providers other than Northwell, and (2) data pertaining to

MultiPlan clients for whose members no record of a Northwell charge exists, are not

proportional to the needs of the case, and therefore are not discoverable under Fed. R. Civ. P.

26(b)(1).

**D.      Scope of Production of Discoverable ESI Under Fed. R. Civ. P. 26(b)(2)(B),**
**26(b)(2)(C), and Fed. R. Civ. P. 34**

Having determined that certain information relating to MultiPlan's revenues, expenses, or

profits arising out of any contract with Northwell, with the exceptions identified above, is

discoverable under Fed. R. Civ. P. 26(b)(1), the Court now turns its attention to the limitations of

Rule 26 on otherwise discoverable information. Rule 26 establishes limitations on the

production of electronically stored information ("ESI") in certain circumstances:

> A party need not provide discovery of electronically stored
> information from sources that the party identifies as not reasonably
> accessible because of undue burden or cost. On motion to compel
> discovery or for a protective order, the party from whom discovery
> is sought must show that the information is not reasonably
> accessible because of undue burden or cost. If that showing is made,
> the court may nonetheless order discovery from such sources if the
> requesting party shows good cause, considering the limitations of
> Rule 26(b)(2)(C). The Court may specify conditions for the
> discovery.

Fed. R. Civ. P. 26(b)(2)(B). Rule 26(b)(2)(C) in turns requires that

> [o]n motion or on its own, the court must limit the frequency or
> extent of discovery otherwise allowed by these rules or by local rule
> if it determines that: (i) the discovery sought is unreasonably
> cumulative or duplicative, or can be obtained from some other
> source that is more convenient, less burdensome, or less expensive;
> (ii) the party seeking discovery has had ample opportunity to obtain
> the information by discovery in the action; or (iii) the proposed
> discovery is outside the scope permitted by Rule 26(b)(1).

Fed. R. Civ. P. 26(b)(2)(C).

To determine whether MultiPlan has met its burden under Fed. R. Civ. P. 26(b)(2)(B), it is necessary to review the testimony of Ms. Christ as to what data MultiPlan is able to produce from its databases. The Court identifies the following relevant testimony regarding MultiPlan's data production capabilities:[12]

> (1) MultiPlan maintains a database called NetworkX in which
> information is accessible by a provider or facility's tax identification
> number. Pl.'s Decl. in Supp. at Ex. 1 (41:8-22). This database
> "brings the client and the provider information together in order to
> determine whether or not the client had access to [a] particular
> provider contract." *Id.*. (43:4-7). Ms. Christ assumes NetworkX can
> be searched with respect to clients. *Id.* (42:22-23, 43:2-11);
>
> (2) MultiPlan maintains a separate database containing certain client
> information, called Salesforce.com. Pl.'s Decl. in Supp. at Ex. 1
> (43:15-17);
>
> (3) When a "percentage of savings" client pays a percentage of
> savings access fee to MultiPlan, some combination of MultiPlan's
> databases can estimate what providers' claim charges are included
> in that fee. Pl.'s Decl. in Supp. at Ex. 1 (62:25, 63:6-9);
>
> (4) With respect to "per employee, per month" clients, MultiPlan
> can produce a "utilization report," which would show charges and
> savings, although per employee, per month clients don't pay an
> access fee based on this amount of savings, and rather pay a flat per
> employee, per month access fee. Pl.'s Decl. in Supp. at Ex. 1 (73:6-
> 11);

---

[12]  The Court acknowledges that MultiPlan can only produce data that is actually reported to it by its clients. *See* Pl.'s Decl., Ex. 1 (93:9-10).

(5) The utilization report can be tailored to an individual provider. Pl.'s Decl. in Supp. at Ex. 1 (73:15);

(6) There is a department at MultiPlan called "Reportrequest" that is dedicated to running reports of the company's databases. Pl.'s Decl. in Supp. at Ex. 1 (77:3-7). Reportrequest is led by an employee named Mike McEttrick. *Id.* (80:17-20);

(7) Through Reportrequest, the account managers of the sales department, as well as the finance department, would be able to produce a report showing the payment history of a particular client to MultiPlan. Pl.'s Decl. in Supp. at Ex. 1 (86:3-14);

(8) MultiPlan would be able to generate a report showing total billed charges by one or all of the Northwell facilities to a particular MultiPlan client. Pl.'s Decl. in Supp. at Ex. 1 (93:1-5);

(9) MultiPlan would be able to generate a report showing billed charges by Northwell to all MultiPlan clients who received services from a Northwell facility. Pl.'s Decl., Ex. 1 (93:6-10, 19-23).

Based on the testimony of Ms. Christ, the Court concludes that MultiPlan is capable of producing reports which would capture certain portions of the information sought by Northwell. According to Ms. Christ, MultiPlan has several tools at its disposal for the exploration of information stored in its databases. Through some combination of these tools, MultiPlan would be able to produce reports showing the following categories of information with respect to Northwell: (1) percentage of saving clients whose access fee includes charges by Northwell, *see* Pl.'s Decl., Ex. 1 (63:6-9); (2) charges and savings by Northwell for each per employee, per month client, *see id.* (73:6-15); (3) the payment history of each client for whose members MultiPlan has a record of charges by Northwell, *see id.* (86:6-14); (4) the total charges billed by Northwell to each client for whose members MultiPlan has a record of charges by Northwell, *see id.* (93:1-5); and (5) billed charges by Northwell to all MultiPlan clients whose members received services at Northwell facilities in the period relevant to this litigation. *See id.* (93:6-10, 19-23). For these five categories of information, the Court finds that MultiPlan has not made a

sufficient showing that this information is not reasonably accessible because of undue burden or cost, and has therefore not met its burden under Fed. R. Civ. P. 26(b)(2)(B).

The Court disagrees that the data sought by Northwell is not discoverable because its production requires "not merely the extraction of data into a new report . . . but rather the *creation* of new data from multiple sources using calculations. That is simply beyond the scope of Rule 34." Def.'s Opp'n. at 14 (emphasis in original). While "a party should not be required to create completely new documents, that is not the same as requiring a party to query an existing dynamic database for relevant information. Courts regularly require parties to produce reports from dynamic databases, holding that the technical burden . . . of creating a new dataset for [ ] litigation does not excuse production." *Apple Inc. v. Samsung Elecs. Co.*, No. 12-CV-0630, 2013 WL 4426512, at *3 (N.D. Cal. Aug. 14, 2013) (internal quotation omitted). *See Gonzales v. Google, Inc.*, 234 F.R.D. 674, 683 (N.D. Cal. 2006) (requiring production of data where it required party to "create new code to format and extract query and URL data from many computer banks, in total requiring up to eight full time days of engineering time."); *Northern Crossarm Co. Inc. v. Chemical Specialties, Inc.*, No. 03–C–415–C, 2004 WL 635606, at *1 (W.D. Wisc. March 3, 2004) (noting that "Rule 34(a) specifies that electronic data falls within the definition of 'documents,' and requires that the respondent must, if necessary, translate that information into reasonably useable form").

MultiPlan holds raw data in several databases. *See* Pl.'s Decl., Ex. 1 (42:22-23; 43:2-11, 15-17). To the extent MultiPlan can input search parameters and produce varying configurations of this raw data, and to the extent the data is otherwise discoverable, MultiPlan cannot avoid production without a more thorough showing that production would be unduly burdensome or costly. It is noteworthy that the only section of MultiPlan's opposition memorandum addressing

the viability of production does not address the cost, hardship, or burden of production. *See* DE 163 at 13-15. MultiPlan's argument in opposition is instead founded on the purported unreliability and incompleteness of data it could produce, and the fact that certain data reports are not run in the ordinary course of business. *Id.* Otherwise conclusory allegations that production would require a complicated departure from ordinary business protocol does not meet the burden established in Rule 26(b)(2)(B). *See New York v. Mt. Tobacco Co.*, No. 12-CV-6276, 2015 WL 3455080, at *11 (E.D.N.Y. May 29, 2015)) (finding conclusory allegations that production would require a "complicated" departure from standard record-keeping protocol were insufficient to meet the standard under Fed. R. Civ. P. 26(b)(2)(B)). And while MultiPlan can challenge the conclusions Northwell draws from the raw data, it cannot raise these challenges to avoid disclosure in the first instance.

MultiPlan's reliance on *A&R Body Speciality and Collision Works, Inc. v. Progressive Cas. Ins. Co.* is misplaced. The court in *A&R Body Speciality and Collision Works, Inc.* declined to order defendants to merge data they had already produced with data from defendants' third party provider, which had also already been produced. No. 3:07-CV-929, 2014 WL 4437684, at *3-4 (D. Conn. Sep. 9, 2014), *adhered to on reconsideration*, No. 3:07-CV-929, 2014 WL 5859024 (D. Conn. Nov. 10, 2014). In the instant litigation, MultiPlan would query its own databases to produce data within its control – data that has not yet been produced. The fact that defendants and their third party provider in *A&R Body Speciality and Collision Works, Inc.* even produced data sets in the first instance shows such production can indeed be proper.[13] *Id.* at *2.

---

[13] It is worth noting the court's treatment of Rule 34 vis-à-vis ESI. "Although all documents are not necessarily data, under Rule 34, all data is encompassed within the definition of 'documents.'" *A&R Body Speciality and Collision Works, Inc.*, 2014 WL 4437684 at *3.

For these reasons, MultiPlan is ordered to produce the five categories of information identified by the Court, and to provide a sworn statement by someone with first-hand knowledge of MultiPlan's databases which identifies each field of information that can be extracted from any database.

While the Court finds that, as outlined above, certain data should be produced under Fed. R. Civ. P. 26(b)(1) to the extent such production is possible as stated in Ms. Christ's deposition, the Court also reiterates that data related to providers other than Northwell, and data related to MultiPlan clients for whose members there is no record of a Northwell charge, is beyond the scope of permitted discovery under Fed. R. Civ. P. 26(b)(1). As the Court previously explained, the production of such information would not be "proportional to the needs of the case," FED. R. CIV. P. 26(b)(1), and is therefore precluded under Fed. R. Civ. P. 26(b)(2)(C)(iii).

With respect to Northwell's demand for information pertaining to the unidentified MultiPlan client identified in Ms. Christ's deposition, *see* Pl.'s Mem. at 14-15, the Court finds there is insufficient reason to preclude production of information related to this client when the information would be otherwise producible. As such, the Court orders information related to this MultiPlan client, including the client's identity, to be produced. The parties shall adhere to the requirements of the Protective Order in the disclosure of all confidential information. *See* DE 53.

### E.  Cost-Shifting Analysis

Generally, the party responding to discovery requests bears all costs associated with production. *See Rowe Entm't, Inc. v. William Morris Agency, Inc.*, 205 F.R.D. 421, 429 (S.D.N.Y. 2002) (recognizing the "well-established legal principle . . . that the responding party will pay the expenses of production"); *Novick v. AXA Network, LLC*, No. 07 CIV. 7767, 2013

WL 5338427, at \*3 (S.D.N.Y. Sept. 24, 2013) ("The presumption is that the responding party must bear the expense of complying with discovery requests, but he may invoke the district court's discretion under Rule 26(c) to grant orders protecting him from 'undue burden or expense' in doing so, including orders conditioning discovery on the requesting party's payment of the costs of discovery.") (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 358, 98 S. Ct. 2380, 2393, 57 L. Ed. 2d 253 (1978)); *Wood v. Capital One Servs., LLC*, No. 09-CV-1445, 2011 WL 2154279, at \*4 (N.D.N.Y. Apr. 15, 2011) ("Ordinarily the presumption is that the party whose ESI is being sought during discovery must bear the expense of complying with the discovery request, just as is the case with regard to any other more traditional discovery."); *Quinby v. WestLB AG*, 245 F.R.D. 94, 101 (S.D.N.Y. 2006) (same); *Hallmark v. Cohen & Slamowitz, LLP*, No. 11-CV-842, 2016 WL 1128494, at \*3 (W.D.N.Y. Mar. 23, 2016) ("[I]n federal civil discovery it is presumed that a responding party will bear the expense of production.").

Notwithstanding operation of the general rule, a court may, under limited circumstances, consider "cost-shifting" of such production expenses to the requesting party. *See Wood*, 2011 WL 2154279, at \*4 (recognizing that "[i]n some cases . . . it is appropriate to shift all or some costs of producing discovery to the requesting party"). Such a deviation "should be considered *only* when electronic discovery imposes an 'undue burden or expense' on the responding party." *Zubulake v. UBS Warburg LLC*, 217 F.R.D. 309, 318 (S.D.N.Y. 2003) (emphasis in original); *see Quinby*, 245 F.R.D. at 101; *Novick*, 2013 WL 5338427, at \*4. In the event a threshold determination is made that the electronic data sought is "relatively inaccessible," the court in *Zubulake* set forth the following factors which should be considered:

    (1)    The extent to which the request is specifically tailored to discover relevant information;

(2)     The availability of such information from other sources;

(3)     The total cost of production, compared to the amount in controversy;

(4)     The total cost of production, compared to the resources available to each party;

(5)     The relative ability of each party to control costs and its incentive to do so;

(6)     The importance of the issues at stake in the litigation; and

(7)     The relative benefits to the parties of obtaining the information.

*Zubulake*, 217 F.R.D. at 322; *see Wood*, 2011 WL 2154279, at *4; *Quinby*, 245 F.R.D. at 102.

In the context of the instant motion, based on the testimony of Ms. Christ, the Court recognizes that discoverable data stored in MultiPlan's several databases is likely comingled with non-discoverable data pertaining to providers other than Northwell and data pertaining to MultiPlan clients whose members never received services at Northwell facilities. Given these circumstances, the Court is directing MultiPlan to provide the Court with an estimated breakdown by MultiPlan's in-house Information Technology director or an outside vendor of the cost to produce the ESI which the Court has authorized in this Memorandum and Order. That information is to be provided to the Court and opposing counsel by April 20, 2018. Northwell will then have ten days to respond to the estimate from its own Information Technology personnel or vendor if it chooses to do so. Once the Court has received this information, it will make a determination whether cost-shifting is appropriate, and, if so, what the reasonable apportionment should be. *See EM Ltd. v. Republic of Argentina*, 695 F.3d 201, 207 (2d Cir. 2012) ("A district court has broad latitude to determine the scope of discovery and to manage the discovery process.").

## F.  Northwell's Motion for Sanctions and an Order of Preclusion

"The district court possesses the inherent power to levy sanctions."  *See Bilodeau v. Vlack*, Civ. No. 07-CV-1178, 2010 WL 2232484, at *6 (D. Conn. Mar. 17, 2010); *see Palmer v. Cty. of Nassau*, 977 F. Supp. 2d 161, 167 (E.D.N.Y. 2013) ("Federal courts have inherent equitable powers of courts of law over their own process, to prevent abuses, oppression, and injustices.").  Neither the adoption of 28 U.S.C. § 1927, a federal statute authorizing sanctions, nor the Federal Rules of Civil Procedure, supplant the inherent power of the court to levy sanctions.  *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 111 (1991).  The Court's inherent power includes the authority to sanction where "a party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *Chambers*, 501 U.S. at 33 (quoting *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 258-59 (1975); *Palmer*, 977 F. Supp. 2d at 167; *see Sassower v. Field*, 973 F.2d 75, 80–81 (2d Cir. 1992) ("The Supreme Court has made clear that a district court has inherent authority to sanction parties appearing before it for acting in bad faith, vexatiously, wantonly, or for oppressive reasons.").

Based on the foregoing standard, and after a review of the parties' motion papers, the Court cannot conclude that MultiPlan has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Chambers*, 501 U.S. at 33 (internal quotation omitted).  While the testimony of Ms. Christ bears out that MultiPlan's databases store information "that would reflect [ ] profit obtained by MultiPlan from January 1, 2006 to the present arising out [of] any contracts entered into between MultiPlan and the plaintiff," Pl.'s Decl., Ex. 10, it does not appear to be the case that MultiPlan has been knowingly withholding documents which clearly link the Participation Provider Agreement and MultiPlan's revenues or profits.  Rather, given the complexity of the data retention systems utilized by MultiPlan in the context of its tri-partite

healthcare network, the instant dispute appears to be a sincere disagreement about the nature of, and possible conclusions one can draw from, nebulous electronically-stored data. For this reason, the Court does not find sanctions to be warranted. *See Summerlin v. City of New York*, No. 13-CV-1617, 2014 WL 4443469, at *2 (S.D.N.Y. Sept. 2, 2014) ("[A] particularized showing of bad faith [is required] to justify the use of the court's inherent power.") (quoting *United States v. Int'l Bhd. of Teamsters*. 948 F.2d 1338, 1345 (2d Cir.1991)); *see also Chambers*, 501 U.S. at 44 ("Because of their very potency, inherent powers must be exercised with restraint and discretion.").

With respect to Northwell's request for a preclusion order, "it must be remembered that a preclusion order is a drastic remedy, and while the district court clearly has the power to issue such an order, that power should be exercised only to the extent necessary to achieve the desired purpose— that is, an entirely just disposition of the case in a speedy and efficient manner." *Syracuse Broad. Corp. v. Newhouse*, 271 F.2d 910, 915 (2d Cir. 1959) (internal citations omitted). When determining whether a preclusion order is appropriate, a Court should consider "(1) the proponent's explanation for failing to provide the subject evidence; (2) the importance of such evidence to the proponent's case; (3) the opponent's time needed to prepare to meet the evidence; and (4) the possibility of obtaining a continuance to permit the opponent to meet the evidence." *Coene v. 3M Co.*, 303 F.R.D. 32, 45 (W.D.N.Y. 2014). Northwell seeks a preclusion order as to expenses associated with revenues generated from the repricing and processing of Northwell claims. *See* Pl.'s Mem. at 24. Weighing these facts in light of the circumstances of this nuanced discovery dispute, the Court concludes that a preclusion order is not appropriate here.

**IV.    CONCLUSION**

For the reasons set forth in this Memorandum and Order, Northwell's motion to compel and for sanctions is GRANTED, in part, and DENIED, in part.  MultiPlan shall produce the estimated breakdown of costs involved in retrieving the information designated by this Order by April 20, 2018.

**SO ORDERED.**

Dated:  March 28, 2018
        Central Islip, New York

/s/ A. Kathleen Tomlinson
A. KATHLEEN TOMLINSON
U.S. Magistrate Judge